UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Benjamin Pedraza, III,** *et al.*, ) | CASE NO. 1:23 CV 1286 |
| ) | |
| Plaintiffs, ) | JUDGE PAMELA A. BARKER |
| ) | |
| v. ) | |
| ) | Memorandum of Opinion and Order |
| **Lieutenant Benjamin Currier,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**INTRODUCTION**

*Pro se* Plaintiffs Benjamin Pedraza, III, Derek Folley and Albert Townsend, filed this action against the Grafton Correctional Institution ("GCI"), GCI Lieutenant Benjamin Currier, GCI Warden Keith J. Foley, GCI Major Frank Garcia, GCI Lieutenant Harrison Jackson, GCI John/Jane Doe Mailroom Employee, GCI Warden's Administrative Assistant Dr. James Wesson, the Ohio Department of Rehabilitation & Correction ("ODRC"), and ODRC Director Annette Chambers-Smith. Plaintiffs filed an Amended Complaint on August 4, 2023, and a Motion for Leave to File a Second Amended Complaint on August 18, 2023. That Motion (Doc. No. 23) is granted. They submitted a Second Amended Complaint (Doc. No. 27) on August 24, 2023. As the Second Amended Complaint supersedes the original Complaint and the Amended Complaint, it is the only pleading the Court will consider.

1

In the Second Amended Complaint, Folley alleges the Defendants interfered with his legal mail, and refused to provide potential evidence to him for his disciplinary hearing. He asserts claims under 42 U.S.C. § 1983 for violation of the First Amendment rights to be free from retaliation and right of access to the courts, the Sixth Amendment confrontation clause, and the Fourteenth Amendment right to equal protection. The Second Amended Complaint also lists claims for violation of 42 U.S.C. § 1985 and Ohio Revised Code § 149.42(c)(2); however, the body of the pleading contains no reference to these statutes or allegations suggesting how they are relevant. Plaintiffs filed a Motion to update damages to $3,333,333.33. (Doc. No. 15). That Motion is granted.

Plaintiffs each filed a Motion to Proceed *In Forma Pauperis* (Doc. Nos. 2, 3, and 4). Pedraza did not provide a copy of his prisoner trust account statement and his application therefore was incomplete. While Townsend's application was complete, none of the allegations or legal claims in the Second Amended Complaint pertain to him. In fact, none of the legal claims pertain to Pedraza either.[1] All of the causes of action are based on incidents that involved Folley. After filing his *In Forma Pauperis* Motion, Folley paid the full filing fee of $ 402.00 claiming that the other two inmates would reimburse him for their portion of the fee if the case had a favorable outcome for them. Generally, this Court would not permit such an arrangement, and all Plaintiffs would equally be assessed one-third of the filing fee. In this case, however, it is apparent that Folley is the actual Plaintiff in this case.

---

[1] Pedraza states that he received a notice that incoming mail from the Ohio Secretary of State was being held because it contained unauthorized funds, specifically a money order from Giant Eagle. Pedraza does not allege who obtained the money order, why it was sent to the Secretary of State or why the Secretary of State would send it to him. The prison asked Pedraza where he wanted it to be sent and then processed it in accordance with his instructions. It appears he was not charged to send the money order out of the institution. Pedraza does not indicate a claim for relief arising from this occurrence, or a defendant against whom that claim would be asserted.

Pedraza and Townsend are included in this action on the inference that the things that happened to Folley could also happen to them. Because Pedraza and Townsend cannot base their right to relief on Folley's alleged injuries, their claims are dismissed. If they want to proceed with claims based on their own injuries, they must file their own Complaints with allegations that personally involved them and must take responsibility for payment of the filing fee either in full or in installments as provided by 28 U.S.C. § 1915(e). The Motions to Proceed *In Forma Pauperis* (Doc. Nos. 2, 3, and 4) are denied. This action shall proceed solely on the claims of Folley.

## BACKGROUND

The Second Amended Complaint contains very few factual allegations. Folley states that Lieutenant Currier, Warden Foley, Director Chambers-Smith, the ODRC, and GCI, have "been ordering and/or instituting a policy of opening 'Inmate Folley's Legal Mail not in his presence... withholding Inmate Folley's outgoing & incoming legal mail," and retaliating against "Inmate Folley by not processing his outgoing legal mail in a timely fashion." (Doc. No. 27 at PageID #: 351, 354, 355, 356, and 357). He provides no other explanation of this statement. He then states that he "suffer[s] from 'Schizophrenia' and is on the Mental Health caseload at Grafton Correctional Institution." (Doc. No. 27 at PageID #: 352, 354, 355, 356, and 357). He asserts, without explanation, that the Defendants discriminated against him on the basis of mental illness. (Doc. No. 27 at PageID #: 352, 354, 355, 356, and 357). Finally, Folley claims that these Defendants denied him equal protection when they refused to provide him with control numbers for incoming mail while providing those numbers to attorneys and law firms. (Doc. No. 27 at PageID #: 351, 354, 355, 356, and 357).

3

The control numbers to which Folley refers are mandated by ODRC Policy 75-MAL-03 and Ohio Admin. Code §§ 5120-9-17 which govern the handling of inmate incoming legal mail by Ohio prisons. If an attorney with an active license to practice in the State of Ohio, a law firm, a legal clinic, the Correctional Institution Inspection Committee, or court personnel wish to send a confidential communication to an inmate as legal mail, that sender must apply for and receive a control number that is placed on the envelope. Only incoming mail that is given a control number will be treated as legal mail and opened for inspection in the presence of the inmate. All mail without a control number will be treated as regular mail. Regular mail is opened, copied, and delivered to the addressee. In recognition of the fact that courts often send documents and correspondence that are not confidential and part of the public docket, mail coming from a court is not automatically considered to be legal mail unless the court receives a control number for the correspondence. It is the sender that determines if the correspondence contains confidential or privileged information. It appears from the limited information Folley provided in the Second Amended Complaint that he believes the inmate recipient of the mail should be able to request control numbers for mail he would like to be kept confidential even if the sender does not consider the information to be sensitive.

Folley's only allegation pertaining to Major Garcia is that he is the immediate supervisor of Defendant Currier. (Doc. No. 27 at PageID #: 358). He does not suggest a legal claim he is asserting against Garcia.

Folley includes claims against John/Jane Doe Mailroom Employee. He alleges that on July 9, 2023, he placed four envelopes in the prison mail. These envelopes contained summonses and copies of the complaint in *Folley v. Merz*, No. 1:23 CV 1016 (N.D. Ohio Aug. 15, 2023). He contends that only one of the envelopes reached its destination because

4

Currier instructed John/Jane Doe Mailroom Employee to "finagle with these legal mail envelopes." (Doc. No. 27-1 at PageID #: 371). He contends John/Jane Doe Mailroom Employee sent two of the letters by regular mail instead of certified mail and retaliated against him by placing the wrong postage on one or both of the envelopes. (Doc. No. 27 at PageID #: 361-362). He asserts this action also denied him access to courts. (Doc. No. 27 at PageID #: 362). He further claims the mail clerk placed the certified mail sticker on the bottom of the third envelope instead of the top of the envelope. (Doc. No. 27 at PageID #: 362). He does not explain how that affected the delivery of the envelope. He contends this establishes a claim for conversion.

Folley claims he sent kite communications to Wesson asking him for copies of all email exchanges between Currier and Garcia between May 1, 2023 and August 14, 2023 as well as copies of grievances they each filed. (Doc. No. 27 at PageID #: 364-368). He does not indicate the responses he received from his request. He does not specify a legal cause of action he is asserting against this Defendant.

Finally, Folley asserts a claim against Lieutenant Jackson. Jackson is on the Rules Infraction Board ("RIB"). Folley alleges he was sent to segregation on July 18, 2023, for being out of place. He contends the officer that wrote the report included information that was incorrect. Folley demanded to see the body camera footage from the incident, but Jackson told him the camera was not working that date. Folley admits that during the hearing he threatened to sue Jackson and accused Jackson of "trying to railroad [him]" because he was a Plaintiff in a civil rights action against the Institution. (Doc. No. 27 at PageID #: 359). Jackson responded that he did not care about the lawsuit because "it is not his money." (Doc. No. 27 at PageID #: 359). Folley repeatedly referred to the proceedings as a "Kangaroo

5

Court." (Doc. No. 27, at PageID #: 359). This prompted Jackson to remove him from the hearing for being unruly. (Doc. No, 27 at PageID #: 359). He states he was sentenced to seven days in segregation. He contends the Lieutenant deprived him of his right to confront witnesses by refusing to make the body camera footage available.

### STANDARD OF REVIEW

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); *see Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this

6

pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir. 1998).

### DISCUSSION

As an initial matter, the ODRC, GCI, and all Defendants sued in their official capacities are immune from suits for damages under the Eleventh Amendment. *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The immunity created by the Eleventh Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977).

Furthermore, Folley has not stated a proper claim for relief against Warden Foley, ODRC Director Chambers-Smith, and Major Garcia in their individual capacities. These Defendants appear to have been included in this action solely because they directly or indirectly supervise mailroom employees at GCI. Supervisors may be held liable for the unconstitutional conduct of their subordinates in only certain limited circumstances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. Therefore, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Instead, "supervisory liability requires some 'active unconstitutional

7

behavior' on the part of the supervisor." *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Consequently, unless Folley affirmatively pleads the direct involvement of the Defendant in the allegedly unconstitutional action, the Complaint fails to state a claim against that Defendant and dismissal is warranted. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Here, Folley does not allege any facts to suggest Foley, Chambers-Smith, or Garcia were personally involved in any of the actions alleged in the Complaint. He has not established a legal basis to impose liability on these Defendants.

Folley also failed to identify any claims against Wesson. To satisfy basic notice pleading requirements, a Complaint must give the Defendant fair notice of what the Plaintiffs' legal claims are and the factual grounds upon which they rest. *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). Folley did not specify any legal causes of action which could pertain to Wesson's actions, and none are apparent on the face of the Complaint. He fails to state a claim upon which relief may be granted against Wesson.

The Court now turns its attention to Folley's claims against Currier, John/Jane Doe, and Jackson. His claims against Currier and John/Jane Doe focus on their handling of his mail. His claim against Jackson is based on his actions in a disciplinary hearing.

Although inmates retain the right under the First Amendment to receive mail, it is more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). Some rights, particularly those found in the First Amendment, are simply at times inconsistent with the status of a prisoner. *Id*. at 229; *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Incoming mail poses a particularly high threat to prison safety and security. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). For this

reason, a prison regulation pertaining to incoming mail will be upheld as long as it is "reasonably related to legitimate penological interests."  *Turner*, 490 U.S. at 413.

When considering regulations that govern inmate mail, a distinction is drawn between legal mail and non-legal mail.  Legal mail is given greater protection from unreasonable intrusion because this type of correspondence may impact the inmate's attorney-client privilege, or his right of access to the courts.  *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).  Legal mail, therefore, may be opened and inspected for contraband by prison officials only in the prisoner's presence.  *Id*.  Conversely, prison officials may open, inspect for contraband, copy, and read a prisoner's incoming non-legal mail provided that the inspection is conducted pursuant to a policy to maintain prison security.  *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir.1993).  Not all mail that a prisoner receives from a legal source, however, is considered to be "legal mail."  *Sallier*, 343 F.3d at 874; S*tanley v. Vining*, 602 F.3d 767, 770–71 (6th Cir. 2010).  The question of what constitutes legal mail is a question of law.  *Id.* at 871; *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009).

The only claim which Folley asserts regarding his incoming legal mail is that the Defendants denied him equal protection by refusing to allow him to assign control numbers to his incoming legal mail while allowing courts, law firms and attorneys to request those numbers.  The Equal Protection Clause prohibits government actors from making distinctions or treating one differently from others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  Folley, however, is not similarly situated to law firms, attorneys, correctional institution inspection committees

9

or courts.  In this instance, he is the recipient of the mail and not the sender.  The sender is in the best position to determine if the information he or she places in the envelope is meant to be confidential or privileged.  In addition, law firms, attorneys, correctional institution inspection committees and courts are far less likely than inmates to deliberately mislabel a letter to circumvent security screenings.  The Defendants did not deny Folley equal protection under the Fourteenth Amendment by refusing to allow him to decide whether his incoming mail should be classified as legal or regular mail.

The Complaint contains three claims pertaining to outgoing mail.  First, Folley asserts that Currier retaliated against him by "not processing his outgoing legal mail in a timely fashion," and John/Jane Doe Defendant retaliated against him on July 9, 2023 by failing to put the correct amount of postage on an envelope.  (Doc. No. 27 at PageID #: 351, 362).  Second, Foley claims John/Jane Doe denied him access to the courts by placing the wrong postage on an envelope causing it to be returned for insufficient postage.  Third, Folley claims the Defendants discriminated against him on the basis of a disability.

Folley fails to state a claim for retaliation under the First Amendment.  This claim is stated solely as a legal conclusion.  The Complaint provides no information about these incidents that plausibly suggest the actions were retaliatory.  Foley does not explain what he believes to be a "timely fashion" to process mail and states nothing more than a mailroom clerk put the incorrect amount of postage on one or two envelopes.  He then concludes that these actions were retaliatory.  Accepting the limited factual allegations as true, it is equally possible that both of these occurrences were unintended or caused by others outside of the prison.  Adding the word retaliation to a brief description of an alleged error is not sufficient

10

to state a claim. At best, it is a legal conclusion. Legal Conclusions alone are not sufficient to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678.

Similarly, Folley failed to state a claim for discrimination based on a disability. Again, he does not allege facts to support this claim. It too is stated solely as a legal conclusion and must be dismissed.

Furthermore, Foley failed to state a claim for denial of access to the courts. To state a claim for denial of access to the courts, a Plaintiff must allege that particular actions of the Defendant prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint...."). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In order words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. Folley did not suffer an actual injury from the Defendants' actions. The Defendants' placement of incorrect postage on envelopes containing documents for service in *Foley v. Merz*, No. 1:23 CV 1016 (N.D. Ohio Aug. 15, 2023) had no effect on the disposition of that case. That action was dismissed on the merits of his claims on August 15, 2023. All Defendants in the action entered an appearance and filed a Motion to Dismiss. They did not contest the validity of service. Folley's access to the courts claims are dismissed.

11

In addition to claims pertaining to mail, Folley brings a claim against Jackson for his role in a disciplinary hearing. Specifically, he asserts that Jackson denied him the right to confront witnesses at the disciplinary proceedings by refusing to produce body camera footage that would show the staff member was incorrect about an allegation that a corrections officer made in the conduct report accusing him of being out of place. The right to confront witnesses, however, does not apply in prison disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 567-68 (1974); *Smith v. Padilla*, No. 1:22-CV-1234, 2022 WL 16534540, at *3 (N.D. Ohio Oct. 28, 2022); *Mason v. United States*, No. 4:20 CV 2087, 2020 WL 8474733, at *2 (N.D. Ohio Dec. 22, 2020). That claim is dismissed.

Folley also asserts a claim for violation of 42 U.S.C. § 1985. He does not explain this claim. It is merely listed as a cause of action. To establish a violation of § 1985, Folley must allege that the Defendants conspired together for the purpose of depriving him of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Folley does not allege facts suggesting the existence of a conspiracy nor does he allege that any of the Defendants acted to discriminate against him on the basis of race.

Finally, the other claims that Plaintiffs assert for denial of public records requests and the tort of conversion, arise under state law. State employees are immune from civil liability under Ohio law for injuries caused in the performance of the employee's duties "unless the ... employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless ... the ... employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 9.86. However, the Ohio Court of Claims

that has the "exclusive, original jurisdiction to determine, initially, whether the ... employee is entitled to personal immunity under section 9.86 ...." Ohio Rev. Code § 2743.02(F). Federal courts, including this Court, therefore cannot exercise supplemental jurisdiction over state law claims against a state employee in his or her individual capacity until the Ohio Court of Claims determines that the employee is not entitled to immunity under Ohio Revised Code § 9.86. *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). Accordingly, unless and until the Ohio Court of Claims decides that Defendants may not invoke immunity from civil liability conferred by Ohio Revised Code § 9.86, this Court has no jurisdiction to consider the state law claims asserted against them.

### CONCLUSION

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915A. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. The Motion to Update Damages (Doc. No. 15) and the Motion for Leave to File a Second Amended Complaint (Doc. No. 23) are granted. All other pending Motions (Doc. Nos. 2, 3, 4, 11, 12, 16, 17, 18, 19, 20, 21, 22, 24, 26, 28, and 29) are denied.

**IT IS SO ORDERED.**

Date: September 26, 2023

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE